IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANNETTE P.,[1] | Case No. 2:21-cv-00438-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Annette P. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in February 1964, plaintiff alleges disability beginning March 20, 2017, due to kidney stones, posttraumatic stress disorder, anxiety, and depression. Tr. 37, 207, 230. Her application was denied initially and upon reconsideration. Tr. 116-26. On August 12, 2019, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE") and a medical expert. Tr. 34-70. On August 28, 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 17-28. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 5-10.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 19. At step two, the ALJ determined the following impairments were medically determinable and severe: "chronic nephrolithiasis[2]; major depressive disorder; generalized anxiety disorder; borderline personality disorder; posttraumatic stress disorder." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform medium exertion work except:

> [She] can understand, remember, and carry out simple, routine, tasks, and instructions. She can maintain concentration persistence, or pace for two-hour intervals between regularly scheduled breaks. [Plaintiff] requires a predictable environment in which changes are seldom. [Plaintiff] can make simple judgments.

---

[2] "Chronic nephrolithiasis means chronic, or recurrent, kidney stones." *United States v. Campbell*, 2020 WL 4432845, *2 n.2 (N.D. Iowa July 31, 2020) (citation omitted).

> [She] is precluded from fast-paced production rate of work. [Plaintiff] can handle occasional interaction with the public or coworkers.

Tr. 22.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 26. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite her impairments, such as hospital cleaner, laundry worker, and janitor. Tr. 27-28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom statements; and (2) rejecting the medical opinion of treating nephrologist Robert Pinnick, M.D. Alternatively, plaintiff maintains that "the administrative proceedings were tainted by the unconstitutional appointment of a Commissioner who was subsequently removed from office for reasons relating to the handling of disability adjudications." Pl.'s Opening Br. 12 (doc. 12).

**I.    Plaintiff's Testimony**

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her physical impairments.[3] When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A

---

[3] Plaintiff "does not allege error in the ALJ's consideration of the limitations related to her mental impairments." Pl.'s Opening Br. 8 n.1 (doc. 12). The medical expert – a psychologist – testified exclusively as to plaintiff's mental limitations. Tr. 38-44. As such, the only medical opinion evidence in the record that relates to plaintiff's physical condition is from Dr. Pinnick and the state agency consulting sources.

Page 3 – OPINION AND ORDER

general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that her "chronic kidney stone disease" physically prevented her from working. Tr. 55. Plaintiff indicated that this condition caused frequent renal kidney stones, which manifested in kidney pain and "blood in [her] urine all the time," which in turn resulted in anemia and associated fatigue. Tr. 56. She testified that it takes anywhere from two days to several weeks to pass a stone, depending on its size and location. Tr. 57. During that period, plaintiff is nonfunctional, spending her time trying to manage the pain symptoms by laying down to stretch out her kidneys, "[d]rinking water like crazy" and "taking massive quantities of pain meds." Tr. 57-59.

In terms of work activity, plaintiff explained that she had two part-time on-call jobs, one for a construction company and one for a touring company. Tr. 60-65. The former typically resulted in four-to-five hour shifts and the latter resulted in two hour shifts, each once or twice per week. Tr. 61-62. Plaintiff testified that her employers understood she would not show up to the job

site, or would leave early, when she was experiencing "kidney problems," which interfered with her work activity approximately 30% of the time. Tr. 61-64.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 23. The ALJ cited to plaintiff's failure to "receive ongoing medical treatment for either physical or mental impairments," as well as her lack of "reported earnings from 2007 through 2017."[4] Tr. 23-24.

In discussing the former, the ALJ found that plaintiff's explanation for her lack of mental health treatment – i.e., "her discomfort and fear of what is happening" – "untenable" because, "[l]ogically, this fear would cause her to be more likely to seek treatment, rather than less," especially given that she has had "positive results" from counseling in the past. Tr. 23. As such, the ALJ only addressed plaintiff's mental health testimony with the requisite specificity. Regarding physical impairments, the ALJ did not inquire, and plaintiff did not proffer any testimony concerning her course of treatment, at the hearing, except to note that she was under Dr. Pinnick's care and had gone to the emergency room to obtain antibiotics and pain medication. Tr. 55, 57-59;

---

[4] The Commissioner also argues that the daily activities cited by the ALJ bely plaintiff's physical symptom testimony. Def.'s Resp. Br. 17-18 (doc. 13). However, the ALJ relied on these activities solely in relation to plaintiff's mental functioning. Tr. 24; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (court's review of the ALJ's decision must be "based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations"). Regardless, as discussed in greater detail below, the Court does not find these activities inconsistent with either the medical record or plaintiff's physical symptom statements. *See Ellefson v. Colvin*, 2016 WL 3769359, *3-4 (D. Or. July 14, 2016) (activities that are "entirely consistent with plaintiff's hearing testimony" do "not support a negative credibility finding") (citing *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998)).

Page 5 – OPINION AND ORDER

see also *Clark v. Berryhill*, 694 Fed.Appx. 578, 578 (9th Cir. 2017) ("[w]hen an ALJ makes an adverse credibility finding but fails to specify what testimony he finds not credible or why he came to this conclusion, he errs").

In any event, it is beyond dispute that plaintiff suffers from a genetic condition that results in kidney stones. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated"). The ALJ accepted chronic nephrolithiasis as a severe, medically determinable impairment at step two and the defining symptom associated with that condition is recurrent and unpredictable pain associated with passing the stone. *See Fellows v. Baca*, 2013 WL 12238537, *9 (C.D. Cal. June 27), *adopted by* 2013 WL 12238844 (C.D. Cal. Aug. 14, 2013) ("[k]idney stones are considered one of the most painful of the urologic disorders") (citation and internal quotations omitted).

There is no reference in the record to any additional, available care that plaintiff failed to obtain. *See* Tr. 699-700, 738-39 (chart notes reflecting that kidney stone treatment is limited to increasing water intake and taking pain medication while "await[ing] passage"; medical intervention is recommended only if an infection or unmanageable pain develops). Indeed, as plaintiff denotes, "[t]here is no curative, or even preventative, treatment for this condition." Pl.'s Reply Br. 3 (doc. 14) ; *see also Lapeirre-Gutt v. Astrue*, 382 Fed.Appx. 662, 664 (9th Cir. 2010) ("[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist"). Accordingly, without more, the ALJ's reliance on plaintiff's failure to seek treatment for her kidney condition is not legally sufficient.

The ALJ's final reason – i.e., plaintiff's "lack of work activity [being] the result of a non-disability related reason" – is likewise not sufficient. The ALJ does not cite to any evidence in support of this rational except plaintiff's earning records. Tr. 24. The remainder of the record is,

Page 6 – OPINION AND ORDER

at best, ambiguous concerning precisely why plaintiff never engaged in substantial work activity. *See David S. v. Comm'r of Soc. Sec.*, 2021 WL 1311235, *4 (W.D. Wash. Apr. 8, 2021) (finding the ALJ's reliance on the claimant's work history inadequate under analogous circumstances) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014)). Both her hearing testimony and the evidence more generally demonstrates that lifestyle choices and/or psychological symptoms prevented plaintiff from working. *See, e.g.*, Tr. 46-47, 51-52, 547, 760, 812. However, the record does corroborate the longstanding and periodic nature of plaintiff's kidney condition.

In sum, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's physical symptom testimony. The ALJ's decision is reversed as to this issue.

## II.    Medical Opinion Evidence

Plaintiff next asserts that the ALJ improperly discredited the opinion of Dr. Pinnick. At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors are accorded greater weight than those of examining doctors, and the opinions of examining doctors are entitled to greater weight than those of a non-examining doctors. *Id.* To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. *Id.*

In March 2016, plaintiff re-established care with Dr. Pinnick for treatment of her kidney condition. Tr. 498. Thereafter, plaintiff saw Dr. Pinnick every three to six months for symptom management. Tr. 489-510, 700-03, 708-16, 775-79, 885-902.

In June 2017, Dr. Pinnick prepared a "Medical Report" in support of plaintiff's application for disability benefits. Tr. 706-07. Dr. Pinnick identified plaintiff's diagnoses as "renal stone disease – recurrent" and "kidney infection." Tr. 706. He indicated that these diagnoses were based on clinical findings, including hematuria (i.e., blood in urine), pyuria (i.e., signs of infection in urine), pain, "N & V," and atypical creatine levels. *Id.* As a result of these conditions, Dr. Pinnick stated that plaintiff would need to lie down during the day and be "incapable of work if passing [a] stone." *Id.* The doctor concluded that plaintiff's "genetic stone [condition was] likely to [cause] issues on and off for life," and would result in plaintiff missing "2-3 days" of work per month "depending on [the] frequency of stones passing," which was "unpredictable." *Id.*

In a separate portion of the form, Dr. Pinnick reported that plaintiff also suffered from fibromyalgia and endorsed "frequent" bilateral handling and reaching limitations, despite otherwise indicating that plaintiff did not have manipulative limitations involving her upper extremities. Tr. 706-07.

The ALJ afforded Dr. Pinnick's opinion "little weight" because: (1) the "manipulative limitations assigned are internally inconsistent"; (2) he "did not cite objective evidence in support of the limitations assigned"; (3) "there is no other mention in the extensive record of fibromyalgia"; and (4) the "level of limitation is not consistent with [plaintiff's] level of activity." Tr. 25-26.

Concerning the first and third rationales, both parties acknowledge that the main issue on appeal is plaintiff's kidney condition. *See* Def.'s Resp. Br. 21-22 (doc. 13) ("the Commissioner acknowledges that these reasons were not directed at Dr. Pinnick's opinion of absences due to

kidney impairment"). In other words, the portions of Dr. Pinnick's report that do not pertain to that condition – including passing references to fibromyalgia and manipulative limitations – do not constitute specific and legitimate evidence.

Regarding the second reason, Dr. Pinnick did in fact cite to objective clinical findings in support of the limitations assigned, such as blood in plaintiff's urine; signs of infection including pus, fever, and chills; and atypical creatine levels. Tr. 706. Lab reports, chart notes, and imaging studies confirm the presence of these clinical findings, along with the kidney stones themselves. *See, e.g.*, Tr. 522, 625, 634-35, 637-45, 701, 870, 885-902; *see also Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014) (ALJ erred by "fail[ing] to recognize that the opinions expressed in check-box form . . . were based on significant experience with [the claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit"). Thus, while an ALJ may, in certain contexts, permissibly reject a medical opinion based largely on a claimant's subjective complaints, this rationale is unavailing here. In other words, the fact that plaintiff may have presented as unremarkable on exam does not rule out kidney-related symptoms and limitations.

Turning to the ALJ's final rationale, inconsistency with the record can serve as a proper basis to reject a medical provider's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In this case, however, substantial evidence does not support the ALJ's decision. Initially, the Commissioner's argument that the ALJ should be affirmed because Dr. Pinnick's opinion was "contradicted by [the state agency consulting sources], who did not attribute any absences to Plaintiff's kidney disorder," is unpersuasive. Def.'s Resp. Br. 22-23 (doc. 13). In particular, "the opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that

Page 9 – OPINION AND ORDER

justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted).

Moreover, although plaintiff's chart notes contain occasional references to certain daily activities – such as caring for pets, engaging in personal hygiene and limited household chores, doing yardwork and gardening, preparing simple meals, quilting, and working part-time – there is a dearth of information concerning the nature and frequency of such activities. *See Treviso v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (absent details about the extent and frequency of the claimant's purportedly inconsistent daily activities, "those tasks cannot constitute substantial evidence [sufficient to reject a treating physician's] informed opinion").

Plaintiff's subjective symptom statements, along with those of the lay witnesses, generally evince that her daily activities were performed around her conditions. *See, e.g.*, Tr. 243-49, 253-57, 273-80. Even plaintiff's recent work activity, which amounts to no more than 15 hours per week and is performed on an on-call basis depending on her current symptom manifestation, is not in-and-of itself inconsistent with Dr. Pinnick's opinion. Stated differently, the fact that plaintiff may have periods of greater activity due to temporary symptom remission does not undermine Dr. Pinnick's opinion regarding the "recurrent" and "unpredictable" nature of her physical work-related limitations of function. *See Payne v. Comm'r, Soc. Sec. Admin.*, 2015 WL 412923, *1 (D. Md. Jan. 29, 2015) (ALJ committed reversible error by failing to take into account the claimant's "anticipated absenteeism" associated with his kidney stones); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir.1995) ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability").

The ALJ erred in evaluating Dr. Pinnick's opinion. As a result, the Court declines to analyze plaintiff's alternate separation of powers argument.

**III.    Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); see also *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly weigh evidence from plaintiff and Dr. Pinnick. The record is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling physical impairments. On one hand, it is undisputed that plaintiff's kidney condition and associated pain and other symptoms are chronic and have persisted in some form since the alleged onset date. On the other hand, both Dr. Pinnick's chart notes and plaintiff's recent work activity suggest that the incidence of renal stones may not have been as great as alleged. For instance, while plaintiff obtained frequent care (often resulting in hospitalization) for her kidney condition at the beginning of the adjudication period, there are fewer treatment notes associated with that condition during 2018 and 2019. In fact, there are no chart notes from Dr. Pinnick post-dating December 2018 and the records that do exist prior to that

date indicate that plaintiff may not have been passing stones monthly. Tr. 894-99. Furthermore, the record intimates that plaintiff's mental impairments were the main barrier to employment.

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the remote alleged onset date, coupled with the complex and longstanding nature of plaintiff's genetic condition, consultation with a medical expert concerning kidney symptoms would be helpful. Therefore, upon remand, the ALJ must consult a medical expert and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 4th day of January, 2022.

                               /s/ Jolie A. Russo
                               Jolie A. Russo
                            United States Magistrate Judge